Schrag v. Blaze Fork Drainage District.

No. 27,471.

JOHN J. SCHRAG, *Appellee*, v. THE BLAZE FORK DRAINAGE DISTRICT, *Appellant*.

SYLLABUS BY THE COURT.

DISMISSAL AND NONSUIT—*Dismissal Without Prejudice—After Reversal and Remand.* Where the only judgment that has been suggested as possible to be entered upon the reversal and remanding of a case on review is dismissal either with prejudice or without prejudice, it is not prejudicial error in itself for the trial court in its discretion to permit the case to be dismissed without prejudice.

Appeal from McPherson district court; WILLIAM G. FAIRCHILD, judge. Opinion filed June 11, 1927. Affirmed.

*Frank O. Johnson,* of McPherson, and *Thomas A. Pollock,* of Kansas City, for the appellant.

*Frank L. Martin,* of Hutchinson, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.:   This is an appeal from a judgment dismissing an action without prejudice where the original judgment of the district court awarded the plaintiff an injunction against the defendant, which judgment on appeal was reversed and remanded. The appellant claims the court erred in sustaining the appellee's application to dismiss the case without prejudice after it had been reversed and remanded, and that under the mandate the court should have rendered a judgment dismissing the case with prejudice.

The action was one by John J. Schrag against the Blaze Fork drainage district for mandatory injunction to require the removal of a dam placed in plaintiff's drainage ditch, and to enjoin the collection of special assessments levied on plaintiff's land to maintain defendant's drainage system. In the trial court the plaintiff prevailed and procured an injunction as prayed for in the petition. The drainage district appealed and this court reversed the decision of the trial court. (*Schrag v. Blaze Fork Drainage District,* 119 Kan. 169, 237 Pac. 1047.) In the opinion it was said:

"The chief question on which the controversy turns is whether an individual

Dismissal and Nonsuit, 18 C. J. pp. 1148 n. 49, 1149 n. 56, 1150 n. 75, 1158 n. 33 new, 34, 1159 n. 38.

may maintain a private drainage system within the borders of a public drainage district without the consent and against the will and judgment of the authorities of the district, and especially may the individual maintain such a private system without the consent of the district when he conveys through his system waters from another drainage area or watershed by artificial means rather than natural drainage—may he do so for the purpose of reclaiming submerged lands by collecting the water that would otherwise flow thereon and cast it upon a lower owner to the lower owner's injury. . . .

"It was within the jurisdiction of the board of supervisors of the defendant district to consider and determine along what route the waters should be carried. . . .

"The defendant district is within its rights in permitting the plaintiff to drain the waters from the area of the basin into the Blaze Fork district under such reasonable terms and conditions as the board of supervisors may prescribe. He could not have done so except by the acquiescence of the defendant district." (pp. 174, 176, 180.)

The mandate of this court, dated August 1, 1925, states, "it was ordered and adjudged by the said supreme court that the judgment of the district court be reversed and that this cause be remanded with directions to proceed in accordance with the court's written opinion." The concluding words of the written opinion are as follows: "The judgment is reversed and the cause remanded with directions to proceed in accordance with the views herein expressed." The views of the court expressed in the opinion are summed up in the last three paragraphs of the opinion immediately preceding the concluding one just quoted, and are as follows:

"It is perfectly apparent that the parties to this litigation have a serious problem for solution. Before the plaintiff built his dike and ditches the basin took care of a large volume of water—a drainage area of 22,000 acres. The little Blaze Fork creek, according to nature's arrangement, took care of a drainage area of 7,000 or 8,000 acres. It is laudable for one to reclaim submerged lands and make them agriculturally productive, provided always that in so doing he does not injure his neighbor.

"The plaintiff succeeded in reclaiming his submerged land, but in so doing injured other agricultural lands on which he cast the water. The defendant district appears to have attempted in good faith to take and dispose of the water from plaintiff's drainage area and at the same time protect the land within the district. The plaintiff should pay the just and reasonable compensation for the conveyance and disposition of the water from his drainage area into that of the defendant. The legislature may have had such a situation in view when, in enacting the drainage act of 1911, it provided that— [Here is quoted R. S. 24-628.]

"There should be coöperation between the parties in solving the problem which confronts them. The defendant should take all proper and reasonable

means to dispose of the flood waters of the district and the plaintiff should. comply with such reasonable terms and conditions as the board of supervisors of the defendant district may prescribe." (p. 182.)

The views, in addition to the determination that the plaintiff should not prevail and that the injunction should not be granted, were along the line of the "solution" of the "serious problem," among which was the necessity of "coöperation between the parties"—the reciprocal duties, particularly those devolving upon the plaintiff and such as were not specifically included in the issues as framed in that particular case, the only issue being whether the plaintiff was entitled to an injunction against the maintenance of a dam in his ditch and against the collection of assessments on his land. This court on review said that he was not, and reversed the trial court. Now, what judgment could have been rendered in the case, if it had been thought best to be more specific? Could it have been anything other than an order for judgment of dismissal? We think not; and this is in harmony with the position taken by the appellant in insisting that it should have been a judgment of dismissal *with prejudice* instead of dismissal *without prejudice*. Attention is called to the statute outlining and restricting the circumstances under which cases may be dismissed without prejudice. The first subdivision is certainly broad enough to include cases returning from a court of review requiring a judgment of dismissal or further proceedings wherein it provides that—

"An action may be dismissed without prejudice to a future action:

"*First.* By the plaintiff, before the final submission of the case to the jury, or to the court where the trial is by the court." (R. S. 60-3105.)

It is contended by the appellant that there remained nothing in this case to submit to the trial court. But suppose either side had asked to amend the pleadings, or the appellant to amend by asking for some affirmative relief, the trial court would undoubtedly have granted such request, it having not necessarily been finally submitted. The only substantial difference between a judgment of dismissal with prejudice and one without prejudice is in the possible expense and annoyance to which the appellant may be subjected by the commencement and prosecution of another suit upon the same state of facts or for the same purpose. The learned counsel for appellant has cited numerous cases holding that it was error for the trial court to permit the plaintiff, after reversal, to dismiss his case without prejudice, but in nearly all of them the court had directed

or indicated a more or less specific judgment. In some of them affirmative relief had been asked; in some, third parties were interested or had intervened; in others, the rights of the successful party would possibly be lost, or the benefit of the judgment indicated would not accomplish the purpose desired or intended. We feel that this case is not one of that kind, and all the difference between the judgment rendered and the one appellant says should have been rendered is the possible expense and inconvenience of another suit or double litigation.

"Plaintiff may dismiss any claim where such dismissal will not prejudicially affect the interests of defendant, but he will not be permitted to dismiss, to discontinue, or to take a nonsuit, when by so doing defendant's rights will be prejudiced, or he will be deprived of any just defense. Nevertheless the injury which would thus be occasioned to defendant must be of a character that deprives him of some substantive rights concerning his defenses not available in a second suit or that may be endangered by the dismissal, and not the mere ordinary inconveniences of double litigation which in the eye of the law would be compensated by costs." (18 C. J. 1158.)

The matter of such voluntary dismissal is largely within the discretion of the court.

"Plaintiff has no absolute right at all times and under all circumstances to discontinue, dismiss, or take a nonsuit, but such right is often dependent upon the effect it has on the rights of defendant, or upon the application being made at the proper time, and the granting of leave to do so is often held to rest within the discretion of the court. Subject to these restrictions plaintiff cannot be compelled by defendant to prosecute the action against his will, but ordinarily he has the legal right, which in some cases is said to amount to an absolute right, to discontinue or dismiss his suit upon such terms and under such conditions as he sees fit, or upon such terms as the court may impose, and his reasons for so doing are of no concern to the court, although he will not be allowed the benefit of this rule when he is seeking thereby to use the process of the court solely with a view to his own financial advantage." (18 C. J. 1148.)

We think there was no error or abuse of discretion in permitting appellee to dismiss without prejudice.

The judgment of the district court is affirmed.